**AYLSTOCK, WITKIN, KREIS,
& OVERHOLTZ, PLLC**
Bryan F. Aylstock, Esq. *(admitted pro hac vice)*
Sin-Ting Mary Liu, Esq. (SBN 282884)
17 East Main Street, Suite 200
Pensacola, Florida 3205
Tel:    (850) 202-1010
Fax:    (850) 916-7449
Email: baylstock@awkolaw.com
Email: mliu@awkolaw.com

**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley Lynn Grombacher, Esq. (SBN 245960)
31365 Oak Crest Drive., Suite 240
Westlake Village, California, 91361
Tel:    (805) 270-7100
Fax:    (805) 270-7589
Email: mbradley@bradleygrombacher.com
Email: kgrombacher@bradleygrombacher.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| SHARON LITTON as Guardian ad Litem and on behalf of TKL, a minor,<br><br>       Plaintiff,<br><br>    -vs.-<br><br>ROBLOX CORPORATION, EPIC GAMES, INC., MICROSOFT CORPORATION, MOJANG AB, and JOHN DOES 1-50<br><br>       Defendants. | **CASE NO.:** 3:25-cv-03088-AMO<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>**DATE:**      **June 30, 2025**<br>**TIME:**      **10:30am PST**<br>**PLACE:**    **Oakland, Courtroom 3, 3ʳᵈ Floor**<br>**JUDGE:**    **Hon. Araceli Martinez-Olguin** |

1

## JOINT CASE MANAGEMENT STATEMENT

Pursuant to Civil Local Rule 16-9, the Standing Order for All Judges of the Northern District of California regarding Contents of Joint Case Management Statement, and this Court's Standing Order for Civil Cases, Plaintiff Sharon Litton, as Guardian ad Litem and on behalf of TKL, a minor, ("Plaintiff") and Defendants Roblox Corporation, Epic Games, Inc., Microsoft Corporation, and Mojang AB ("Defendants") (collectively, "the Parties"), hereby submit the following joint statement.

### 1. Jurisdiction and Service

#### a) Plaintiff's Statement

Plaintiff Sharon Litton, as Guardian ad Litem and on behalf of TKL, a minor, filed her original Complaint on March 28, 2025, in the Superior Court of California, County of San Mateo. On April 4, 2025, Defendant Microsoft Corporation filed a Notice of Removal to Federal Court. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367. No Defendant remains unserved. Plaintiff understands that Microsoft and Mojang intend to move to compel arbitration in this case, and have agreed to those defendants' proposal to sequence that motion first prior to the other motions. Obviously, Plaintiff intend to oppose that motion and believe that, as in other cases involving these defendants in this context, that discovery is likely necessary in order for the Court to decide the motion, particularly given that the defendants are seeking to impose arbitration on a minor plaintiff. The parameters of this arbitration related discovery were laid out for another Court recently, and the Plaintiff believes that a Court may benefit from a fulsome discussion of those issues prior to the filing of the motion. Further, Plaintiff does not believe that a joint case management statement is the proper place to brief and argue complex legal issues, but such should be done through motion practice pursuant to the Rules of Civil Procedure. Accordingly, Plaintiff will not engage in such here, but suffice it to say that Plaintiff shall address all of Defendants' legal motions, and the arguments contained therein, at the appropriate time.

#### b) Defendants' Statement

Microsoft Corporation and Mojang AB's Statement: Plaintiff filed this action in San Mateo Superior Court on March 28, 2025. Before Plaintiff served any of the Defendants, Microsoft removed

this action to the Northern District of California on April 4, 2025, pursuant to 28 U.S.C. 1332. Plaintiff did not attempt to serve Microsoft or Mojang until May 23, 2025, when Plaintiff sent requests to waive service. Microsoft and Mojang promptly returned those waivers, and their responsive pleadings are due on July 22, 2025.

Microsoft and Mojang intend to move to compel arbitration on that date. Microsoft and Mojang disagree with Plaintiff that discovery is necessary or appropriate at this stage of the case. Plaintiff has agreed that the arbitration motion should be heard and decided before the other responsive motions Microsoft and Mojang will file, including a FRCP 12(b) motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim, and a special motion to strike pursuant to Cal. Cod Civ. Proc. § 425.16. The parties will submit a stipulation to the Court reflecting this agreement.

Roblox Corporation's Statement: The plaintiff originally filed this action in San Mateo Superior Court on March 28, 2025. Defendant Microsoft removed the case to this District on April 4, 2025. Roblox did not receive a service waiver request from Plaintiff until June 16, 2025. Roblox signed and returned that waiver on June 18, 2025. (Dkt. 24).  At this time, Roblox has not entered an appearance in the proceedings. By participating in this joint statement, Roblox expressly reserves all its rights and does not waive any defenses. Roblox's response to the complaint is not due until August 15, 2025. Roblox is still evaluating the complaint, but it anticipates potentially filing a motion to dismiss under FRCP 12(b)(3) for improper venue; a motion to compel arbitration and/or transfer venue; a motion to dismiss under FRCP 12(b)(6) for failure to state a claim; and an Anti-SLAPP Motion to Strike.

Epic Games, Inc's Statement: Plaintiff filed her complaint in San Mateo Superior Court on March 28, 2025, and Defendant Microsoft removed to this District on April 4, 2025. Plaintiff did not serve Defendant Epic Games, Inc. ("Epic") or ask Epic to waive service for more than two months. Service on Epic was effectuated less than a week ago, on June 17, 2025, when Epic executed a waiver of service. (Dkt. 22.) Epic has not yet appeared in this action. By participating in this joint statement, it does not waive—and expressly reserves—any potential arguments related to jurisdiction, venue, and any other defense. Epic's responsive pleadings are not due until August 15, 2025.

**JOINT CASE MANAGEMENT STATEMENT**
**Case No. 3:25-cv-03088-AMO**

In light of Plaintiff's recent service on Epic, Epic is still considering several potential dispositive motions, including a motion to dismiss because the Court lacks personal jurisdiction. Epic is incorporated in Maryland and its principal place of business is in North Carolina. (Dkt. 1, Ex. A at ¶ 17.) Epic is therefore not subject to general personal jurisdiction in California. *See Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) ("The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business."). The allegations in the complaint suggest that Epic is not subject to specific personal jurisdiction in California either. Plaintiff Sharon Litton and her child, TKL, are residents of Louisiana. (Dkt. 1, Ex. A at ¶¶ 11, 13.) Plaintiff fails to allege that any of the harms allegedly caused by Epic occurred in California or were caused by conduct in California. Plaintiff alleges only that Epic "routinely conduct[s] business in California and has sufficient minimum contacts in California." (*Cf. id.* at ¶ 29.) Such allegations on their own are an insufficient basis for specific personal jurisdiction. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (to establish specific personal jurisdiction, "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof," *and* "the claim must be one which arises out of or relates to the defendant's forum-related activities."); *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1178 (N.D. Cal. 2022), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) ("bare bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden").

For similar reasons, Epic believes that venue in this District is likely also improper. Plaintiff alleges that just one of the four defendants is a resident of California, not "all defendants," as required under 28 U.S. Code § 1391(b)(1). And Plaintiff does not allege that "a substantial part of the events or omissions giving rise to the claim occurred" in this District, as required under 28 U.S. Code § 1391(b)(2). *See, e.g., In re Bozic*, 888 F.3d 1048, 1053 (9th Cir. 2018) (holding venue was improper where "[n]othing in [plaintiff's' Complaint suggests that a substantial part of the events giving rise to her individual claims—or, indeed, any event giving rise to her individual claims—occurred in the [forum] District.").

Epic will therefore likely file (among other things) a motion to dismiss for lack of personal jurisdiction under FRCP 12(b)(2) and for improper venue under FRCP 12(b)(3).

2.    **Facts**

a) *Plaintiff's Statement*

In 2023, 65% of Americans of all ages played video games every week.  In 2024, experts reported that roughly 85% of teenagers say they play video games, with 97% of boys and 73% of girls reporting video game usage. Further, more than 90% of children older than two years old play video games, and "[c]hildren 8 to 17 years of age spend an average of 1.5 to 2 hours daily playing video games." It is estimated that 8.5% of youths between 8 and 18 are addicted to gaming. This research dramatically illustrates the idea that video game usage has become a fundamental facet in the life of an American child, and much more so than decades ago. Gone are the days of simple controls, short play sessions, and a basic scoring system with leaderboards, replaced by the rise of multiplayer online gaming, video game developers have shifted from a traditional one-time-purchase business model to employing microtransaction systems: users purchase in-game virtual goods with micropayments.  This dramatic and ubiquitous use of video games, in the manner intended by the manufacturers, has resulted in some users becoming dependent and addicted to the use of the games, causing diagnosed mental illness, disruption to daily activities and compulsive and destructive behavior.  It is alleged by the Plaintiff that the Defendants knowingly[1] designed and programmed certain games to ensure that users became psychologically and even physically dependent, in an effort to maximize profits. Video gaming is a multi-billion-dollar industry, larger than the movie and music industry combined, and was projected to reach more than $282 billion in 2024. U.S. consumers spent $248 billion dollars on video games in 2022, representing over 70% of the worldwide market. It is also alleged that Defendants are aware that for nearly two decades, science has shown that prolonged use of video games by minors can result in brain damage, cognitive decline, and physical and emotional deficits.  Indeed, research on the interaction between video game usage and adolescents  has shown that extensive usage has a severe impact on the

[1] Given that this is not a putative class action, items number 5 (adequacy of class representative); number 6 (estimated class size); 7 (actions with overlapping class definitions); and 10 (class contact information) shall not be addressed.

**JOINT CASE MANAGEMENT STATEMENT**
**Case No. 3:25-cv-03088-AMO**

adolescent brain, including loss of grey matter, which leads to severe physical and mental damage.  In light of this research, addiction to and disordered us of video games is a recognized and diagnosable mental disorder and form of behavioral addiction codified by the American Psychiatric Association's 2013 Diagnostic and Statistical Manual and Mental Disorders (DSM-5). New research from a growing number of academic papers has also shown that there is now a thin line between gambling and gaming. Gaming addiction has also been recognized by the World Health Organization (WHO) as a psychiatric diagnosis and is on the rise as escalated usage and revenues from gaming keep growing.  Despite being fully aware of these risks, Defendants marketed their respective games (Roblox, Fortnite and Minecraft) to minors without implementing simple safety features, such as adequate parental controls, warnings, or opt-in limits on time minors can spend in-game.

In this case, Plaintiff used the Defendants' products extensively, and as a consequence suffered extensive damage.   TKL is a 17-year-old minor who is addicted to video games; specifically, Roblox, Fortnite and Minecraft. TKL began playing video games and using Defendants' products at approximately 10 years old. Since that time, TKL has used and/or continues to use Defendants' products at an increasing, uncontrollable, and addictive pace. TKL has no interest in any activities besides playing Roblox, Fortnite, and, Minecraft.  TKL's gaming addiction is a substantial factor in the decline of TKL's academic performance and overall wellbeing. TKL is incapable of restraining his own usage and any attempt to remove TKL from his games is met with severe withdrawal symptoms including anger, injurious behavior to himself, treats of self-harm, and refusal to maintain hygiene or sleep. TKL has been hospitalized with suicidal ideations, anxiety, depression and has been found to suffer symptoms of internet gaming disorder requiring medical and psychological intervention and treatment.

Each Defendant has engaged in negligent, deceptive, unfair, and reckless behavior that damaged and continues to harm Plaintiff TKL and countless other Americans. For this, Plaintiff TKL should be fairly compensated. Further, Defendants should be punished, and punitive damages should be assessed against each Defendant for their respective conduct. TKL never agreed to be harmed or exposed to an addictive Product.

Finally, Plaintiff never entered into a valid contract with any of the Defendants, and/or to the

extent that any Defendant claims TKL attempted to accept an electronic terms and conditions clause by clicking buttons on a screen which included language Plaintiff did not understand, read, or language which was conscionable, and has been made void by virtue of its unconscionability and the power of disaffirmance. This unconscionability and disaffirmance is demonstrated and secured by the filing of this Complaint. Specifically, to the extent that any Defendant claims that Plaintiff TKL entered into a contract, any terms to which Plaintiff agreed are void and unenforceable. Each Defendant's terms of services or terms and conditions clauses is a contract of adhesion and has no variation or negotiable terms prior to the signing of parties. Further, Plaintiff, as a minor, lacked the capacity to contract, and thus expressly disaffirms any contract they may have made with any of the Defendants, or that Defendants may claim they made with TKL who has not reached the age of majority. Plaintiff TKL's continued use of Defendants' Products, to the extent such use exists, is compulsive and due to TKL's addiction to using the Products. Plaintiff's continued use does not serve as an affirmation of any potential contract between the Parties.

### b) *Defendants' Statement*

Plaintiff alleges that the 17-year-old minor TKL is addicted to the video games *Fortnite* and *Minecraft* and to games available on the Roblox platform. (Dkt. 1, Ex. A at ¶ 9.)  Plaintiff sued the developers of these games—Epic, Microsoft, and Mojang—and the creators of the platforms TKL allegedly uses to play these video games—Roblox and Microsoft.[2] (*Id*. ¶¶ 15-25.) Plaintiff seeks damages from all defendants, including punitive damages, on strict liability, negligence, and fraud theories of liability. (*Id*. ¶¶ 302-634.)

### 3.    **Legal Issues**

Plaintiffs' Complaint alleges twenty claims: (1) Strict Product Liability – Design Defect; (2) Strict Product Liability – Failure to Warn; (3) Negligence – Design; (4) Negligence – Failure to Warn; (5) Common Law Negligence; (6) Statutory Negligence; (7) Intentional Misrepresentation; (8)

---

[2] Microsoft is named in both its capacity as developer of the video game *Minecraft* and in its capacity as operator of the Xbox platform.

Negligent Misrepresentation; (9) Fraud; (10) Violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code, §§ 17200 *et seq.*); (11) Strict Product Liability – Design Defect; (12) Strict Liability – Failure to Warn; (13) Negligent Design; (14) Negligence – Failure to Warn; (15) Common Law Negligence; (16) Statutory Negligence; (17) Intentional Misrepresentation; (18) Negligent Misrepresentation; (19) Fraud; (20) Violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code, §§ 17200 *et seq.*).

### a) Plaintiff's Statement

Plaintiff is a minor child and has disaffirmed any alleged contract requiring arbitration and will continue to disaffirm such contracts. Plaintiff is prepared to brief this issue on the merits and does not intend to argue the merits here. Suffice it to say Plaintiff does not believe arbitration applies in this case.

### b) Defendants' Statement

Video games are creative and expressive works that immerse players in epic adventures, extraordinary virtual worlds, and interactive experiences. Through this lawsuit, Plaintiff attempts to stifle this creative medium by seeking to impose liability on both video game developers—like Epic and Mojang, creators of *Fortnite* and *Minecraft*, respectively—and operators of online platforms—like Microsoft and Roblox—through which those and many other games can be accessed and played.

With respect to the claims against the game developers, Plaintiff allegedly finds *Fortnite* and *Minecraft* too engaging. But Plaintiff's claims are barred entirely by the First Amendment. *See, e.g.*, *Angelilli v. Activision Blizzard, Inc.*, 2025 WL 1184247, at *5-7 (N.D. Ill. Apr. 23, 2025) (First Amendment barred similar "addiction-related" claims against Roblox predicated on "the way the Roblox world and its characters are designed"). As the U.S. Supreme Court held in *Brown v. Entertainment Merchants Association*, 564 U.S. 786, 790 (2011), the First Amendment protects video games—complex, creative works that "communicate ideas—and even social messages—through many familiar literary devices (such as characters, dialogue, plot, and music) and through features distinctive to the medium (such as the player's interaction with the virtual world)." In addition to being barred by the First Amendment, Plaintiff's Complaint is deficient for numerous other reasons including but not limited to

8

the following: Plaintiff's product-liability claims fail because video games are expressive works to which product liability law does not apply; Plaintiff's negligence claims fail because content creators have no legal duty to safeguard their audiences from harm allegedly caused by consuming their content; Plaintiff's fraud-based claims fail because the Complaint does not identify any statements developer defendants made that are false, much less with the requisite particularity. *See also Angelilli*, 2025 WL 1184247 at *7-9 (dismissing plaintiffs' negligence per se, fraud, and negligent misrepresentation claims for substantially the same reasons). As to all claims, the Complaint does not adequately allege developer defendants proximately caused Plaintiff's alleged harms.

Plaintiff's claims against the platform defendants fail for many of the same and additional reasons. First, they are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230, which bars holding service providers and platforms liable, under any theory of liability or cause of action, for information originating with a third-party. *See, e.g.*, *Angelilli*, 2025 WL 1184247, at *3-4 (Section 230 barred plaintiffs' similar "addiction-related claims" against Roblox predicated on Roblox platforming third-party created games and providing tools for users "to interact with each other" socially). Plaintiff's claims against the platform defendants also are barred by the First Amendment, which protects them for their role in making video games available to the public and selecting and choosing how to present that third-party content. *Id.* at *4 (noting that Section 230's protections overlaps with this First Amendment protection). Again, video games are creative works recognized by the U.S. Supreme Court as being entitled to full First Amendment protection, and the Constitution shields platforms that publish, curate, and facilitate dissemination of those works just as much as it protects a game's developers. Each one of Plaintiff's claims also fails as a matter of law for other reasons, including but not limited to the following: Plaintiff's product liability claims fail because the platform defendants' platforms are not products; Plaintiff's negligence claims fail because the platform defendants had no legal duty to protect plaintiffs from alleged harms from third-party games; Plaintiff's fraud-based claims fail because they have not identified any actionable misrepresentations or omissions by Roblox or Microsoft, let alone with the level of particularity required by Federal Rule of Civil

Procedure 9(b). Finally, as to all claims, Plaintiff does not sufficiently allege that the platform defendants' conduct proximately caused their purported injuries.

### 4.   Motions

#### a)  Plaintiff's Statement

There are no pending motions. The Parties reserve the right to file motions as appropriate, including motions for summary judgment (or partial summary judgment), and pretrial motions, including motions *in limine*.

#### b)  Defendants' Statement

On April 4, 2025, Defendant Microsoft Corporation removed this case from the Superior Court of the State of California for the County of San Mateo to the Northern District of California. (Dkt. 1.)

Defendants anticipate bringing several disposition motions in near future.

Microsoft and Mojang anticipate filing a motion to compel arbitration when their responsive pleadings are due on July 22, 2025. If that motion is denied, pursuant to a forthcoming stipulation reflecting Plaintiff's agreement that the arbitration motion should be heard and decided before other responsive motions, Microsoft and Mojang anticipate moving to dismiss under FRCP 12(b) for lack of personal jurisdiction, improper venue, and failure to state a claim. They also anticipate filing a special motion to strike pursuant to Cal. Cod Civ. Proc. § 425.16.

Roblox is still evaluating the complaint, but it anticipates potentially filing a motion to dismiss under FRCP 12(b)(3) for improper venue; a motion to compel arbitration and/or transfer venue; a motion to dismiss under FRCP 12(b)(6) for failure to state a claim; and an Anti-SLAPP Motion to Strike.

Epic is currently analyzing the complaint, as it waived service less than a week ago and its responsive pleadings are not due until August 15. At this time, Epic anticipates filing a motion to dismiss under FRCP 12(b)(2) for lack of personal jurisdiction; a motion to dismiss under FRCP 12(b)(3) for improper venue; a motion to compel arbitration and/or transfer venue; a motion to dismiss under FRCP 12(b)(6) for failure to state a claim; and an Anti-SLAPP Motion to Strike based on the numerous deficiencies presented by Plaintiff's case.

10

**JOINT CASE MANAGEMENT STATEMENT**
**Case No. 3:25-cv-03088-AMO**

**5.    Amendment of Pleadings**

The Parties do not anticipate any amendments to the pleadings at this time, although Plaintiff reserves the right to amend the complaint should the facts so warrant, and in particular to address any jurisdictional arguments made by Defendants.

**6.    Evidence Preservation**

*a)  Plaintiff's Statement*

Plaintiff is aware of and has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and Plaintiff confirms that they will take reasonable and proportional steps pursuant to Fed. R. Civ. P. 26(f) to preserve evidence relevant to the issues reasonably evident in this action. Given the nature of the ESI preservation in this case, Plaintiff believes an ESI/Preservation Protocol is likely appropriate which will likely entail multiple rounds of negotiation with all the defendants.  Plaintiff has not yet met and conferred with Defendants Roblox and Epic due to these Defendants' recent waivers of service but intend to engage in joint discussion on these issues as appearances have been noticed.

*b)  Defendants' Statement*

Microsoft and Mojang's Statement: The parties have not met and conferred pursuant to FRCP 26(f). Plaintiff did not attempt to meet and confer with Defendants until the deadline to do so had already passed, and at that time neither Roblox nor Epic had been served. Given Plaintiff's delayed service, Microsoft proposed a brief continuance of the Case Management Conference until a time when all parties had been served and could participate. Plaintiff rejected that proposal.

Roblox's Statement: Roblox has not met and conferred pursuant to Fed. R. Civ. P. 26(f). Plaintiff neglected to serve Roblox for two months. By the time Plaintiff asked Roblox to waive service, the deadline under Fed. R. Civ. P. 26(f) to meet and confer before an initial case management conference had already passed. Plaintiff would not agree to continue this case management conference and therefore Roblox had no opportunity to satisfy Fed. R. Civ. P. 26(f) before this conference.

**JOINT CASE MANAGEMENT STATEMENT**
**Case No. 3:25-cv-03088-AMO**

Epic's statement: The parties have not met and conferred pursuant to Fed. R. Civ. P. 26(f). Plaintiff chose not to serve Epic with the Complaint nor even to ask Epic to waive service until a week ago. By the time Plaintiff asked Epic to waive service, the deadline under Fed. R. Civ. P. 26(f) to meet and confer before an initial case management conference had already passed. Plaintiff's delay thus left Epic with no opportunity to satisfy Fed. R. Civ. P. 26(f) before this conference.

In light of this timing, Epic requested that the parties agree to continue this case management conference so that the parties could meet and confer in accordance with the Local Rules and Federal Rules of Civil Procedure. Epic's proposal would have spared the parties and the Court unnecessary time and expense. Plaintiff refused any continuance.

**7.    Disclosures**

Neither party has exchanged initial disclosures as of the date of the filing of this Joint Case Management Statement.  The Parties propose that they exchange their Initial Disclosures within 30 days after the Court rules on Defendants' anticipated motions to compel arbitration and/or transfer venue, motions to dismiss the amended complaint, and Anti-SLAPP motions to strike.

**8.    Discovery**

Plaintiffs have not served initial discovery requests on Defendants.

**9.    Scope of Anticipated Discovery**

*a)  Plaintiff's Statement*

Plaintiffs intend to seek discovery from Defendants and third-party sources related to the following topics, among other things, 1) Development of the games in question, and the manipulation of addictive properties of same; 2) Defendants' awareness of the addictive nature of the subject games; 3) Defendants' efforts to conceal the true nature of the games' effect on players; 4) Defendants' employment of modalities to maximize game play and limit the player's ability to control game play; 5) The relationship between game developers' strategies and those employed by the gambling industry and 6) the damages sustained by game players. Moreover, if and when any Defendant files a motion to compel arbitration, Plaintiff believes that discovery will likely be necessary to resolve the issue of arbitration, particularly here where the Plaintiff is a minor.   As with other issues contained in this

12

report, Plaintiff does not believe that joint case management statement is the proper place to argue and brief complex legal issues but will be prepared to fully brief and address the issue of a discovery stay at the appropriate time and at the instruction of the Court.

### b) Defendants' Statement

Defendants respectfully request that the Court enter an order staying all discovery until the Court decides Defendants' threshold motions. As described above, Epic, Microsoft, Mojang, and potentially Roblox anticipate bringing motions to compel arbitration and/or transfer venue. Defendants also anticipate filing motions to dismiss for failure to state a claim and Anti-SLAPP motions to strike based on the numerous deficiencies presented by Plaintiff's case. Epic, Microsoft, and Mojang also anticipate bringing motions to dismiss for lack of personal jurisdiction and for improper venue. The most efficient way to resolve the Parties' motions is to set a schedule under which Defendants' motions are decided before commencing any discovery.

Courts in this District use a two-pronged test to determine whether to stay discovery pending dispositive motions—and both prongs of that test support a stay here. *See Hamilton v. Rhoads*, No. C 11-0227 RMW PR, 2011 WL 5085504, at \*1 (N.D. Cal. Oct. 25, 2011).

First, Defendants' anticipated motions would dispose of this entire case—and the motions are highly likely to succeed. *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 602 (D. Nev. 2011) ("In applying this two-factor test, the court deciding the motion to stay must take a 'preliminary peek' at the merits of the pending dispositive motion."). Federal courts in related cases have repeatedly granted motions by Epic, Microsoft, Mojang, and others to compel arbitration. *See Dunn v. Activision Blizzard, Inc.*, 749 F. Supp. 3d 976 (E.D. Ark. 2024); *Ayers v. Epic Games, Inc.*, No. 1:24-cv-0064-AW (N.D. Fla. Jan. 27, 2025) (Dkt. 162); *Antonetti v. Activision Blizzard, Inc.*, 764 F. Supp. 3d 1309 (N.D. Ga. 2025); *Angelilli v. Activision Blizzard, Inc.*, 2025 WL 524276, at \*15 (N.D. Ill. Feb. 18, 2025); *Johnson v. Activision Blizzard, Inc.*, No. 3:24-cv-00026-JM, 2025 WL (E.D. Ark. Mar. 3, 2025) (Dkt. 142); *Orellana v. Roblox Corp.*, No. 6:24-cv-762-JSS-RMN, 2025 WL 694428, at \*11 (M.D. Fla. Mar. 4, 2025); *Courtright v. Epic Games, Inc.*, No. 24-cv-04055, 2025 WL 558560, at \*19 (W.D. Mo. Feb. 13, 2025) . In the handful of related cases where claims were not subject to motions to arbitrate, federal courts have dismissed the

**JOINT CASE MANAGEMENT STATEMENT**
**Case No. 3:25-cv-03088-AMO**

complaint for failure to state a claim. *See Angelilli v. Activision Blizzard*, No. 23-cv-16566 (N.D. Ill. April 23, 2025)( Dkts. 214, 215); *Jameson v. Roblox Corp.*, No. 24-cv-01602-JMB-DJF (D. Minn. May 21, 2025) (Dkt. 78); *Broussard v. Roblox Corp.*, No. 1:24-CV-1697-TWT (N.D. Ga. April 10, 2025). Federal courts have thus repeatedly dismissed or compelled to arbitration claims that are materially identical to Plaintiffs' claims here and no federal court has permitted a related case to progress beyond the pleading stage. *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002), *as amended on denial of reh'g and re'g en banc* (Apr. 17, 2002) ("a district court may stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief." (alterations adopted)).

Second, the dispositive motions can be decided without discovery. In each of the related cases cited above, the court compelled arbitration or dismissed the action without discovery. Although Plaintiff contends that they intend to demand discovery related to Defendants' motions to compel arbitration, Plaintiff cannot articulate any material distinction between this case and the many other recent cases in which federal courts enforced the plaintiffs' binding arbitration agreements with Defendants. There is none.

A stay of discovery is appropriate for the additional reason that several of Defendants' anticipated motions go to the core question of whether this case may even proceed in this Court. This includes Defendants' anticipated motions to dismiss for lack of personal jurisdiction and improper venue and their motions to compel arbitration and/or transfer venue. Courts recognize that forcing a defendant to participate in discovery while the defendant is attempting to enforce an arbitration agreement would destroy some of the benefits of that agreement. *Cf. Coinbase v. Bielski*, 599 U.S. 736, 743 (2023) ("If the district court could move forward with pre-trial and trial proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost."). Courts likewise recognize that parties not subject to personal jurisdiction should not be subject to discovery. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (affirming denial of request for jurisdictional discovery because "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery.").

**JOINT CASE MANAGEMENT STATEMENT**
**Case No. 3:25-cv-03088-AMO**

A stay of discovery is also appropriate because of the immediate rights of appeal arising out of any denial of a motion to compel arbitration or of an Anti-SLAPP motion. Even if these motions were denied, Defendants would have an immediate right to appeal, and filing such an appeal would automatically stay all discovery and other proceedings. *See Moser v. Encore Cap. Grp., Inc.*, 2007 WL 1114113, at *2 (S.D. Cal. Mar. 27, 2007) ("an appeal of denial of an anti-SLAPP motion 'automatically stays all further trial court proceedings on the merits upon the causes of action affected by the motion.'"); *Coinbase*, 599 U.S. at 743 (an interlocutory appeal of a motion to compel arbitration triggers "an automatic stay of district court proceedings").

**10.    Modifications to the Discovery Rules**

The Parties do not currently request any modifications to the Discovery Rules but reserve the right to request modifications as the litigation proceeds.

**11.    Agreement to Enter a Stipulated E-Discovery Order**

The Parties agree to cooperate and work in good faith toward reaching an agreement on a stipulation regarding the preservation and production of electronically stored information, as well as a protective order governing the discovery and use of confidential information.  If agreement cannot be reached, the Parties will seek the Court's assistance.

**12.    Discovery Disputes**

The Parties have not identified any discovery disputes at this time.

**13.    Class Actions**

The Plaintiff does not assert claims on behalf of a class.

**14.    Related Cases**

*a)  Plaintiff's Statement*

The counsel for Plaintiff have not filed any cases in federal court and so far only a handful in California state court.  Plaintiff's counsel here did not file for, nor advocate for, an MDL, nor did they appear at the JPML.  At the time of that JPML petition, filed well over a year ago, a select few federal court actions had been filed by an attorney unaffiliated with the undersigned counsel and against a myriad of defendants not named in the instant complaint.   Plaintiff's counsel here had no role in drafting any

15

**JOINT CASE MANAGEMENT STATEMENT**
**Case No. 3:25-cv-03088-AMO**

state or federal complaint other than those in which they are counsel of record. In particular, the Federal Court complaints cited by the Defendants below make a litany of allegations against a myriad of defendants who are not present in the instant complaints, and even a cursory review of any of the other list Federal complaints would allow the Court to assess the many differences in the allegations and the legal arguments that will be put before this Court for review and decision. That said, Plaintiffs do agree that there are many pending cases related to video game addition, both in state and federal court, and Plaintiff's counsel will be prepared to fully address the similarities and differences among them at the conference should the Court so desire.

### b) Defendants' Statement

For the Court's awareness, Plaintiff's complaint in this case closely tracks (sometimes verbatim) complaints that more than a dozen other plaintiffs have filed in federal courts around the country. These federal complaints, though filed by other law firms, each allege claims of video game addiction against some of the Defendants herein. After the United States Judicial Panel on Multidistrict Litigation denied centralization of the federal cases, *see* Order Denying Transfer, *In Re: Video Game Addiction Products Liability Litigation*, Case MDL No. 3019, Dkt. 92 (June 5, 2024), Plaintiffs filed many similar cases in California state court, including this case and at least four others in which Plaintiff's counsel in this case is listed as counsel of record.[3] The complaint in the present case closely tracks the claims and allegations made in the other cases and contains lengthy passages that track other complaints nearly verbatim. *Compare* Dkt. 1, Ex. A at ¶¶ 31-78 (general allegations regarding the video game industry) *with Saenz et al. v. Roblox Corporation et al.*, No. 24STCV21076 (LA Cnty.) Complaint at ¶¶ 121-163 (substantively similar general allegations regarding the video game industry).

The federal and state cases are identified below.

**Federal cases:**

- *Angelilli v. Activision et al.*, No. 1:23-cv-16566 (N.D. Ill.)

---

[3] The cases identified with an asterisk (*) have been brought by Plaintiff's counsel.

- *Antonetti v. Activision et al.*, No. 1:24-cv-02019 (N.D. Ga.)

- *Ayers v. Epic Games et al.*, No. 1:24-cv-00064 (N.D. Fla.)

- *Black et al. v. Epic Games, Inc. et al.*, No. 3:24-cv-08064 (N.D. Cal.)

- *Broussard v. Microsoft et al.*, No. 1:24-cv-01697 (N.D. Ga.)

- *Courtright v. Epic Games et al.*, No. 2:24-cv-4055 (W.D. Mo.)

- *Donerson v. Epic Games et al.*, No. 3:24-cv-00041 (E.D. Ark.)

- *Dunn v. Activision et al.*, No. 3:23-cv-224 (E.D. Ark.)

- *Foster v. Take-Two Interactive Software-Inc. et al.*, No. 1:24-cv-00919 (N.D. Ohio)

- *Glasscock v. Activision et al.*, No. 2:24-cv-04036 (W.D. Mo.)

- *Jameson v. Roblox Corp. et al.*, No. 24-cv-01602 (D. Minn.)

- *Jimenez v. Microsoft et al.*, No. 3:23-cv-03678 (S.D. Ill.)

- *Johnson v. Activision et al.*, No. 3:24-cv-00026 (E.D. Ark.)

- *Orellana v. Roblox Corp. et al.*, No. 6:24-cv-00792 (M.D. Fla.)

- *Roberts v. Activision et al.*, No. 1:24-cv-01876 (N.D. Ga.)

- *Sayers v. Microsoft et al.*, No. 4:24-cv-00078 (S.D. Ga.)

**California state court cases:**

- *Black et al. v. Epic Games, Inc. et al.*, No. 24CV087673 (Alameda Cnty.)

- *Black et al. v. Roblox Corporation. et al.*, 24CV103034 (Alameda Cnty.)

- *Jasper et al. v. Roblox Corporation et al.*, No. BCV-24-102789 (Kern Cnty.)

- *Cole et al. v. Roblox Corporation et al.,* No. 25STCV05743 (LA Cnty.)

- *Conant et al. v. Roblox Corporation et al.*, No. 24STCV20942 (LA Cnty.)

- *Copeland et al. v. Roblox Corporation et al.*, No. BCV-25-100823 (Kern Cnty.)

- *Freeman et al. v. Roblox Corporation et al.*, No. 24STCV20804 (LA Cnty.)

- *Gibson et al v. Roblox Corporation et al.*, No. 24STCV32897 (LA Cnty.)*

- *Issa et al. v. Roblox Corporation et al.*, No. 25STCV13262 (LA Cnty.)*

- *Jefferson et al. v. Roblox Corporation et al.*, No. 24STCV20810 (LA Cnty.)

- *Johnson et al. v. Roblox Corporation et al.*, No. 25CV004184 (Sacramento Cnty.)

17

---

**JOINT CASE MANAGEMENT STATEMENT**
**Case No. 3:25-cv-03088-AMO**

- *Martin et al. v. Roblox Corporation et al.*, No. 24STCV20820 (LA Cnty.)
- *Nickerson et al. v. Epic Games, Inc. et al.*, No. C25-0064 (Contra Costa Cnty.)
- *Roy et al. v. Roblox Corporation, et al.*, No. 25STCV14346 (LA Cnty.)
- *Sawyer, et al. v. Epic Games, Inc., et al.*, No. 25STCV10619 LA Cnty.)*
- *Saenz et al. v. Roblox Corporation et al.*, No. 24STCV21076 (LA Cnty.)
- *Ward et al. v. Roblox Corporation et al.*, No. 24STCV32892 (LA Cnty.)
- *Williams et al. v. Roblox Corporation et al.*, No. CGC25622764 (San Francisco Cnty.)*
- *Zemama et al. v. Roblox Corporation et al.*, No. 25CV013526 (Sacramento Cnty.)

### 15.    Relief

#### a) Plaintiff's Statement

Plaintiff seeks a jury trial and the following categories of damages: past, present and future general damages in an amount to be determined at trial; For past, present and future special damages, including but not limited to past, present and future lost earnings, economic damages and others, in an amount to be determined at trial; any appropriate punitive or exemplary damages; any appropriate statutory damages; for costs of suit; for interest as allowed by law; for attorney's fees and costs as applicable; for treble damages as applicable; for such other and further relief as the court may deem proper.

#### b) Defendants' Statement

Plaintiff's claims are deficient such that Plaintiff is not entitled to any damages.

### 16.    Settlement and ADR

#### a) Plaintiff's Statement

Plaintiff understand the Defendants believe that settlement discussions are premature at this time, but stand ready to discuss ADR and Settlement whenever their position may change. At that time, Plaintiff believes that a private mediator would be the most appropriate way forward and would obviously meet and confer with the Defendant or Defendants as to the appropriate person to oversee any mediation.

#### b) Defendants' Statement

Defendants believe that settlement discussions would be premature at this juncture. There have been no ADR efforts to date. And, as described above, Plaintiff has not met and conferred with Microsoft, Mojang, Epic or Roblox.

**17.    Other References**

The Parties agree that this case is not suitable for reference to a special master or the Judicial Panel on Multidistrict Litigation at this time, but reserve the right to revisit these issues as the case proceeds.

**18.    Narrowing Issues**

The Parties have not agreed on any issues that can be narrowed at this time.

**19.    Expedited Trial Procedure**

The Parties agree that this case is not suitable for the Expedited Trial Procedure set forth in General Order 64, Attachment A.

**20.    Scheduling**

| Event | Proposed Date |
|---|---|
| Rule 26(a)(1) Initial Disclosures | 30 days after the Court's ruling on the motions to compel arbitration, motions to dismiss, and motions to strike |
| Close of Fact Discovery | 12 months after Court's ruling on the motions to compel arbitration, motions to dismiss, and motions to strike |
| Affirmative Expert Disclosures | 1 month after Close of Fact Discovery |
| Rebuttal Expert Disclosures | 2 months after Affirmative Expert Disclosures |
| Close of Expert Discovery | 4 months after Rebuttal Expert Disclosures |
| Dispositive motions and *Daubert motions due* | 2 months after the Close of Expert Discovery |
| Hearing on dispositive motions and *Daubert* motions | 2 months after dispositive motions and *Daubert* motions filed |
| Pretrial Conference | 3 months after Court's ruling on dispositive motions |
| Trial | 4 weeks after the Pretrial Conference |

19

**21.    Trial**

*a) Plaintiff's Statement*

Plaintiff requests that the case be tried to a jury.

*b) Defendants' Statement*

Defendants do not agree to a jury trial, including because Plaintiff's claims are subject to binding arbitration agreements and appear to suffer from jurisdictional and venue deficiencies. The Parties' position on the timing of the date for trial is set forth above, and they believe it is premature to estimate the length of trial at this time.

**22.    Disclosure of Non-Party Interested Entities or Persons**

*a) Plaintiff's Statement*

Plaintiff will file her Certificate of Interested Parties. Plaintiff does not have conflicts or interests to report outside of the parties.

*b) Defendants' Statement*

Microsoft and Mojang's Statement: Microsoft and Mojang filed a Certification of Interested Entities or Persons on April 4, 2025. (*See* Dkt. 2.)

Roblox's Statement: Plaintiff's delay in effectuating service on Roblox gave Roblox limited time to appear or submit its Certification of Interested Entities or Persons. Roblox intends to do so by June 25, 2025.

Epic's Statement: Plaintiff's delay in effectuating service on Epic gave Epic limited time to appear or submit its Certification of Interested Entities or Persons. Epic intends to do so by June 25, 2025.

**23.    Professional Conduct**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**24.    Other**

At this time, the Parties are not aware of other matters that may facilitate the resolution of this matter.

20

Respectfully submitted,

Dated: June 23, 2025                  AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC

By:     */s/ Bryan F. Aylstock*_____
        Bryan F. Aylstock, Esq. (admitted *pro hac vice)*
        S. Mary Liu, Esq. (SBN 282884)
        *Attorneys for Plaintiff*

Dated: June 23, 2025                  DAVIS WRIGHT TREMAINE LLP

By:     */s/ Adam S. Sieff*_____
        Ambika Kumar
        Adam S. Sieff
        Haley B. Zoffer
        *Attorneys for Defendants*
        *Microsoft Corporation and Mojang AB*

Dated: June 23, 2025                  HUESTON HENNIGAN LLP

By:     */s/ Allison L. Libeu*_____
        Moez M. Kaba
        Allison L. Libeu
        Padraic W. Foran
        Warren S. Crandall
        *Attorneys for Defendant Epic Games, Inc.*

Dated: June 23, 2025                  ORRICK, HERRINGTON & SUTCLIFFE LLP

By:     */s/ David P. Fuad*_____
        David P. Fuad
        John P. Badalich
        *Attorneys for Defendant Roblox Corporation*

**JOINT CASE MANAGEMENT STATEMENT**
**Case No. 3:25-cv-03088-AMO**

**SIGNATURE ATTESTATION**

I, Bryan F. Aylstock, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1, I hereby attest that all counsel whose e-signatures (/s/) appear on this document concurred in this filing.


DATED: June 23, 2025                    By: /s/ *Bryan F. Aylstock*_____

22