UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THOMAS K. LITTON,<br><br>        Plaintiff,<br><br>        v.<br><br>ROBLOX CORPORATION, et al.,<br><br>        Defendants. | Case No. 25-cv-03088-AMO   (PHK)<br><br>**DISCOVERY MANAGEMENT ORDER NO. 2**<br><br>(Order Relates to All Cases) |
| GUILLERMO GALARZA,<br><br>        Plaintiff,<br><br>        v.<br><br>EPIC GAMES, INC., et al.,<br><br>        Defendants. | Case No. 25-cv-06245-AMO   (PHK) |
| JOHNNA HENDRICKS, et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>ROBLOX CORPORATION, et al.,<br><br>        Defendants.<br><br>AND ALL RELATED CASES. | Case No. 25-cv-10275-AMO   (PHK) |

Currently pending in this District are 28 related cases alleging at a general level that computerized video games designed and offered by Roblox, Microsoft, Mojang AB, and Epic

Games[1] caused harms to each of the named Plaintiffs under various legal theories, including but not limited to products liability and negligence.

On February 27, 2026, the presiding District Judge issued an Order selecting three representative pilot cases: *Litton v. Roblox*, Case No. 25-cv-3088; *Galarza v. Epic Games*, Case No. 25-cv-6245; and *Hendricks v. Roblox*, Case No. 25-cv-10275. *See* Dkts. 127 (-03088 case), 77 (-06245 case), 49 (-10275 case). These cases, and all related cases, have been referred to the undersigned for all discovery purposes. *See* Dkts. 118 (-03088 case), 73 (-06245 case), 39 (-10275 case). Further, the February 27 Order selecting the pilot cases states that "the Court will allow all the parties to conduct targeted discovery related to their motions to compel arbitration and motions to dismiss for lack of personal jurisdiction. The parties shall work with Judge Kang to determine the permissible scope of such discovery." [Dkt. 127 (-03088 case) at 6].

On March 31, 2026, the undersigned issued Discovery Management Order ("DMO") No. 1, [Dkt. 135 (-03088 case)], to start the process of rationally coordinating and planning for discovery in these cases. The Court also set the first Discovery Management Conference ("DMC") for May 14, 2026. *Id.* In response, the Parties submitted a proposed Joint Stipulated Protective Order [Dkt. 142 (-03088 case)], proposed Protocol re: Discovery of Electronically Stored Information [Dkt. 153 (-03088 case)], and Joint Discovery Plan [Dkt. 144 (-03088 case)]. In anticipation of the first DMC, the Parties also submitted a Joint Status Report. [Dkt. 150 (-03088 case)].

On May 14, 2026 the Court held the first DMC.  [Dkt. 159 (-03088 case)]. Having considered the Joint Discovery Plan, all papers in support of the Plan, Joint Status Report, and argument of counsel at the first DMC, the Court issues this Order memorializing its verbal directives from the May 14 DMC (which are hereby incorporated by reference).

### LEGAL STANDARDS

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of

[1] Not all entities are defendants in each case.

United States District Court
Northern District of California

discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The relevant legal standards for discovery are well-known. Rule 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging

United States District Court
Northern District of California

discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

With regard to proportionality, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (*citing Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality

of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

**DISCUSSION**

As discussed above, in her February 27 Order, Judge Martinez-Olguin granted the Parties leave to "conduct targeted discovery related to their motions to compel arbitration and motions to dismiss for lack of personal jurisdiction. The parties shall work with Judge Kang to determine the permissible scope of such discovery." [Dkt. 127 (-03088 case) at 6]. In view of this referral Order and in the exercise of the Court's discretion to control the sequence and timing of discovery, the undersigned Ordered that discovery in these actions shall be phased and directed the Parties to submit proposed Discovery Plans for Phase One (the "targeted discovery" relating to the arbitration motions and the motions to dismiss) and for Phase Two (remaining discovery on merits and all other remaining issues in these cases). *See* Dkt. 135 (-03088 case) (DMO No. 1) at 4. This Order resolves the issues and disputes between the Parties raised in their Status Report and Discovery Plans.

**I.     Protective Order**

Prior to the DMC, the Parties submitted a Proposed Stipulated Protective Order. [Dkt. 142 (-03088 case)]. The disputes between the Parties were limited to four sections of the Protective Order: Sections 2.4, 2.7, 7.1, and 7.4(a)(2). Other than disputes in these four sections, the Parties' Proposed Protective Order mirrors the Court's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information, and/or Trade Secrets.

With respect to Sections 2.4, 2,7, and 7.4(a)(2), Plaintiffs propose various modifications to the Model Protective Order. [Dkt. 142 (-03088 case) at 3, 13]. Defendants propose no changes to these sections of the Model Protective Order. *Id.* Most, if not all, of Plaintiffs' proposed edits are in connection with expert witnesses or in-house counsel's access to confidential information. At the DMC, it became apparent that most if not all of the concerns regarding expert witnesses relate to experts and consultants working on the merits of these cases, and the issues are of less concern in connection with the arbitration motions or the personal jurisdiction motion during Phase One. That is, at the DMC it became apparent that most of the concerns raised by Plaintiffs which prompted their proposed edits relate to experts and in-house counsel in the context of merits

discovery in this case. For these reasons, these proposed edits were rejected as unnecessary and premature, particularly because the Model Protective Order is presumptively reasonable and that presumption was not overcome sufficiently to warrant departing from the language in these sections of the Model Protective Order at this time. *See Wade v. City and Cnty. of San Francisco*, No. 25-cv-09623-PHK, 2026 WL 1002049, at *2 (N.D. Cal. Apr. 14, 2026) ("The Northern District of California has 'approved' the Model Protective Orders it provides online, and the Model PO's terms are 'deemed to be presumptively reasonable in most case.'") (citation omitted).

With regard to Section 7.1, Defendants proposed changes from the Model Protective Order primarily addressing the use of Confidential/Highly Confidential Information with an Artificial Intelligence (AI) tool. [Dkt. 142 (-03088 case) at 10]. At the DMC, the Parties and the Court noted that the undersigned's Standing Order for Civil Cases has multiple provisions addressing Artificial Intelligence tools and the responsible use of such tools by lawyers (and experts and Parties generally). *See* Standing Order for Civil Cases at Section VII(C). The Court ordered at the DMC and hereby confirms that it is **ORDERED** that Section VII(C) of the undersigned's Standing Order for Civil Cases shall apply to all matters within the scope of referral to the undersigned in these cases, including these discovery matters. Because there already exists a set of provisions addressing AI tools in that Standing Order, Defendants did not demonstrate sufficient cause to overcome the presumption of reasonableness and to warrant editing the Model Protective Order to address those same issues. *Wade*, 2026 WL 1002049 at *2.

Accordingly, as discussed at the DMC, the Court **ORDERS**:

(a) Section 2.4 **SHALL** not be edited as proposed and the Model Protective Order language shall be used for the Protective Order in these cases;

(b) Section 2.7 **SHALL** not be edited as proposed and the Model Protective Order language shall be used for the Protective Order in these cases;

(c) Section 7.1 **SHALL** not be edited as proposed and the Model Protective Order language shall be used for the Protective Order in these cases. Further, the Court **ORDERS** that Section VII(C) of the undersigned's Civil Standing Order regarding artificial intelligence is now applicable to these cases;

6

(d) Section 7.4(a)(2) **SHALL** not be edited as proposed and the Model Protective Order language shall be used for the Protective Order in these cases.

These rulings are **WITHOUT PREJUDICE** as to requesting potential modifications once the Parties reach Phase Two of discovery, if sufficient good cause is shown to warrant modifying the Protective Order at that time.

As directed at the DMC, the Parties submitted a new Jointly Proposed Protective Order that removes any disputed language and inserts any agreed upon new language, and the Court entered the Protective Order on May 18, 2026. *See* Dkts. 161, 162 (-03088 case).

## II.    Electronically Stored Information ("ESI") Protocol

Prior to the DMC, the Court directed the Parties to submit a proposed ESI Protocol Order based on the Court's Model ESI Order. [Dkt. 135 (-03088 case) (DMO No. 1) at 3-4]. The Parties submitted a document comparing each side's proposed edits to the Model ESI Order for Patent Cases. [Dkt. 158 (-03088 case)]. The Court discussed these proposed edits (which were extensive) at the DMC.

Much like the Model Protective Order, this District's Model ESI Protocol is "not required, but instructive." *See Finisar Corp. v. Nistica, Inc.*, No. 13-cv-03345-BLF (JSC), 2014 WL 12887160, at *2 (N.D. Cal. Dec. 12, 2014) ("[O]ther courts in this District have found the procedures set forth in the Model Order, particularly as they pertain to email discovery, to be reasonable). Several of the proposed edits to the Model ESI Protocol were clearly not objected to. *See* Dkt. 158 (-03088 case). Also, other proposed edits to the Model ESI Protocol were agreed upon at the DMC to the extent those edits simply removed inapplicable text which is directed to patent litigation. *Id.* Accordingly, the Parties' Proposed ESI Protocol is **SO ORDERED AND GRANTED** to the extent neither Party stated any objections to specific edits in the comparison chart. *Id.* Similarly, the Proposed ESI Protocol is also **SO ORDERED AND GRANTED** as to those deletions which remove patent specific or other inapposite language (and for which no objection was raised at the DMC).

As noted, the remaining proposed edits to the Model ESI Protocol are extensive and the need for these objected-to edits (and the bases for the objections) are not detailed in the comparison

United States District Court
Northern District of California

chart. It became apparent at the DMC that the Parties had not fully met and conferred on the ESI Protocol (or their competing proposed edits), had not used the Court's ESI Checklist, and had not fully resolved their disputes as to these remaining proposed edits. Accordingly, as directed at the DMC, as to all other remaining proposed edits to the Model ESI Protocol, the Parties are **ORDERED** to meet and confer, use the Court's ESI Checklist, and follow the recommendations in the Court's ESI Guidelines to attempt to reach reasonable agreement on narrowing or resolving all these remaining proposed edits to the Model ESI Protocol. For purposes of proportionality, the Parties **SHALL** focus their edits to the ESI Protocol based on the needs of the case as it stands now, in Phase One of discovery. The Parties were **ORDERED** to meet and confer **by May 22, 2026** and continue those efforts until completed. The Parties **SHALL** submit their revised Joint Proposed ESI Protocol (with a declaration and redline as required by the Court with regard to modifications to a Protective Order) **by May 29, 2026**.

### III.    Initial Disclosures

At the DMC, the Court reviewed with the Parties the competing proposals for scheduling of service of Initial Disclosures. The Court **ORDERED** the Parties to serve Initial Disclosures relating to the anticipated Motions to Dismiss and Motions to Compel Arbitration, to the extent a Defendant plans to file any such motions. At the DMC, the Defendants confirmed that they each plan to file Motions to Compel Arbitration (and thus, each of their Initial Disclosures should address documents, witnesses, and other matters relating to their motions). Prior to the DMC, Defendants Microsoft and Mojang AB withdrew their Motion to Dismiss. [Dkt. 93 (-03088 case)]. At the DMC, counsel for Microsoft and Mojang represented that these Defendants do not intend to refile their Motion to Dismiss for lack of personal jurisdiction. Thus, the only Defendant whose Initial Disclosures should also address jurisdictional issues and the motion to dismiss is Epic Games. Plaintiffs' Initial Disclosures should be similarly focused on the anticipated motions. The Court **ORDERED** the Parties to identify in the Initial Disclosures what anticipated motion each identified witness relates to.

The Parties were **ORDERED** to serve initial disclosures related to the anticipated Motion to Dismiss and Motions to Compel Arbitration by **May 18, 2026**. In their Initial Disclosures, the

Parties **SHALL** identify witnesses they plan to rely upon for each motion. Because these Initial Disclosures are focused on the anticipated motions (which will involve oppositions and replies), the Court repeats its directive to the Parties of their obligations under Fed. R. Civ. P. 26(e) to supplement disclosures in a timely manner (particularly with regard to opposition/rebuttal witnesses and documents/evidence, as well as reply/surrebuttal witnesses and documents/evidence).  The Court **ORDERS** the Parties to abide by their obligations to supplement their Initial Disclosures on an ongoing basis.  To ensure that there is at least one round of supplementing of Initial Disclosures, as discussed at the DMC the Court **ORDERS** the Parties to supplement their Initial Disclosures on **July 3, 2026** (but to be clear this supplementation does not substitute for or relieve the Parties of their obligations to serve additional supplements to their respective Initial Disclosures (especially as discovery proceeds) both before and after this date).

### IV.    Jurisdictional Discovery Limits

The Motion to Dismiss for Lack of Jurisdiction implicates only one Defendant, Epic Games. As discussed, Defendants Microsoft and Mojang AB previously withdrew their Motion to Dismiss [Dkt. 93 (-03088 case)] and verbally represented at the DMC that they do not intend to refile their Motion.

At the DMC, the Court reviewed and heard argument from counsel on discovery limits with regard to the anticipated Motion to Dismiss.  In the exercise of discretion to control discovery and mindful that discovery should be proportional to the needs of the case, and keeping in mind that the purpose of Phase One discovery is "targeted discovery", the Court **ORDERS** the following discovery limits:

Plaintiffs are permitted to serve the following discovery requests to Defendant Epic Games: five Requests for Production; five Interrogatories; and twenty Requests for Admission.  Defendant Epic Games admitted at the DMC that Epic Games does not need substantial discovery from Plaintiffs in order to proceed on the Motion to Dismiss.  Accordingly, per the discussion at the DMC, Epic Games is permitted to serve the following discovery requests on the pilot case Plaintiffs: twenty Requests for Admission.

These numerical limits on discovery requests are imposed by this Order without in any way

limiting the Parties from reaching agreement or stipulations to modify the numerical limits.  If disputes arise as to any of these discovery requests, the Parties **SHALL** fully comply with Section H of the undersigned's Discovery Standing Order concerning discovery disputes.

With regard to depositions, Plaintiffs are permitted to serve one Rule 30(b)(6) deposition notice on Defendant Epic Games, limited to five topics. Each side is permitted to depose each person identified by the opposing side in that opposing side's Initial Disclosures (or supplements thereto) as likely witnesses on behalf of and under the control of the disclosing party in connection with the Motion to Dismiss.

As discussed at the DMC, the number of individual depositions to be taken is generally within the control of each side with regard to how many persons they choose to identify as witnesses on their behalf in their Initial Disclosures.  However, if either side does not identify any witnesses in their Initial Disclosures, the opposing side is permitted to notice the deposition of one fact witness of the other side.

The Parties **SHALL** fully comply with this Order (and to the extent not inconsistent the Standing Discovery Order) with regard to scheduling and conduct of depositions. The Parties **SHALL** follow the undersigned's Standing Discovery Order regarding early identification of witnesses and the requirement to meet and confer regarding scheduling depositions on an ongoing basis.  Failure to timely identify a witness in a Party's Initial Disclosures may result in discovery sanctions.  Further, failure to pre-clear deposition availability dates in August for likely witnesses under a Party's control and identified in that Party's Initial Disclosures may also result in discovery sanctions.

The Parties are **ORDERED** to meet and confer by **July 3, 2026** to start scheduling depositions. The Parties are **ORDERED** to jointly file the agreed-upon deposition schedule for all fact witnesses by **July 20, 2026**. The Parties **SHALL** cooperate in scheduling and adjusting schedules to accommodate witnesses.

These limits on depositions are imposed by this Order without in any way limiting the Parties from reaching agreement or stipulations to modify the limits.  If disputes arise as to depositions, the Parties **SHALL** fully comply with Sections D and H of the undersigned's

10

Discovery Standing Order concerning disputes relating to depositions.

Based on the Parties' representations that there is no need for third party discovery at the DMC, third party discovery is **NOT** permitted at this time.

### V.    Arbitration Motion Discovery Limits

As discussed above, the anticipated Motions to Compel Arbitration implicate all four named Defendants.  At the DMC, the Court reviewed and heard argument from counsel on discovery limits with regard to the anticipated Motions to Compel Arbitration.  In the exercise of discretion to control discovery and mindful that discovery should be proportional to the needs of the case, and keeping in mind that the purpose of Phase One discovery is "targeted discovery," the Court **ORDERS** the following discovery limits:

Plaintiffs are permitted to serve the following numbers of discovery requests to each Defendant: three Requests for Production for each Defendant; and three Interrogatories for each Defendant. Defendants as a side are permitted to serve the following numbers of discovery requests: one Request for Production to each pilot case Plaintiff; and one Interrogatory to each pilot case Plaintiff. Each side is permitted to serve twenty Requests for Admission (total) to the opposing side.

These numerical limits on discovery requests are imposed by this Order without in any way limiting the Parties from reaching agreement or stipulations to modify the numerical limits.  If disputes arise as to any of these discovery requests, the Parties **SHALL** fully comply with Section H of the undersigned's Discovery Standing Order concerning discovery disputes.

With regard to depositions, Plaintiffs are permitted to serve one Rule 30(b)(6) deposition notice on each Defendant, limited to five topics. Each side is permitted to depose each person identified by the opposing side in that opposing side's Initial Disclosures (including supplements thereto) as likely witnesses on behalf of and under the control of the disclosing party in connection with the Motions to Compel Arbitration.

As discussed at the DMC, the number of individual depositions to be taken is generally within the control of each side with regard to how many persons they choose to identify as witnesses on their behalf in their Initial Disclosures.  However, if either side does not identify any witnesses

in their Initial Disclosures, the opposing side is permitted to notice the deposition of one fact witness of the other side.

The Parties **SHALL** fully comply with this Order (and to the extent not inconsistent the Standing Discovery Order) with regard to scheduling and conduct of depositions. The Parties **SHALL** follow the undersigned's Standing Discovery Order regarding early identification of witnesses and the requirement to meet and confer regarding scheduling depositions on an ongoing basis. Failure to timely identify a witness in a Party's Initial Disclosures may result in discovery sanctions. Further, failure to pre-clear deposition availability dates in August for likely witnesses under a Party's control and identified in that Party's Initial Disclosures may also result in discovery sanctions.

The Parties are **ORDERED** to meet and confer by **July 3, 2026** to start scheduling depositions. The Parties are **ORDERED** to jointly file the agreed-upon deposition schedule for all fact witnesses by **July 20, 2026**. The Parties **SHALL** cooperate in scheduling and adjusting schedules to accommodate witnesses.

These limits on depositions are imposed by this Order without in any way limiting the Parties from reaching agreement or stipulations to modify the limits. If disputes arise as to depositions, the Parties **SHALL** fully comply with Sections D and H of the undersigned's Discovery Standing Order concerning disputes relating to depositions.

Based on the Parties' representations that there is no need for third party discovery at the DMC, third party discovery is **NOT** permitted at this time.

**VI.    Depositions Generally**

All depositions are seven hours on the record. If interpreters are needed for any witnesses, the Parties **SHALL** cooperate to set reasonable additional time limits, taking into account translation delay. The Parties **SHALL** cooperate regarding location and other logistics for depositions to accommodate witnesses. While the Court does not set deadlines for scheduling expert witness depositions in this Order, the Court contemplates that such a deadline will be set after the next DMC and the Parties should be prepared to address those issues at that time. The Parties **SHALL** read and comply with the undersigned's Standing Discovery Order regarding the

12

conduct of depositions, proper and improper objections, and professionalism expected.

## VII.   Administrative Withdrawal of Motion to Dismiss

For docket control purposes as discussed at the DMC and similar in spirit to Judge Martinez-Olguin's March 16, 2026 Order [Dkt. 132 (-03088 case)], the Parties **SHALL** file a stipulation to **ADMINISTRATIVELY WITHDRAW** Epic Games's Motion to Dismiss **WITHOUT PREJUDICE**, specifically including provisions allowing Epic Games to refile the Motion (and ensuring that there is no waiver of rights to refile) approximately two weeks after the close of Phase One discovery.  That stipulation shall be filed **by June 8, 2026**.

## VIII.   Discovery Schedule

At the DMC, the Court reviewed and heard argument from counsel on the schedule for Phase One discovery.  In the exercise of discretion to control discovery and mindful that discovery should be proportional to the needs of the case, and keeping in mind that the purpose of Phase One discovery is "targeted discovery," as Discussed at the DMC, the Court **SETS** the following Discovery Schedule:

| DATE | EVENT OR DEADLINE |
|---|---|
| May 18, 2026 | Initial disclosures including both fact and expert witnesses (if any) |
| May 22, 2026 | Serve written discovery requests |
| June 15, 2026 | File Joint DMC Status Report for DMC No. 2 |
| June 22, 2026 | Serve objections to written discovery requests |
| June 24, 2026 at 1:30 PM | Discovery Management Conference No. 2 In-person in Courtroom D |
| July 3, 2026 | Start meet and confers on scheduling depositions no later than this date. Serve deposition notices by this date or exchange lists of witnesses to be deposed. |

United States District Court
Northern District of California

| | Serve Supplements to Initial Disclosures. |
|---|---|
| July 24, 2026 | Substantial completion of document production |
| July 24, 2026 | Expert identification under Rule 26(a)(1) and 26(a)(2)(A) for Parties with burden of proof or persuasion on an issue. This identification **SHALL** include current resume/CV, name, contact information, and which motion the expert is expected to opine in relation to. |
| August 14, 2026 | Rebuttal expert identification under Rule 26(a)(1) and 26(a)(2)(A). This identification **SHALL** include current resume/CV, name, contact information, and which motion the expert is expected to opine in relation to. |
| August 24, 2026 | Completion of fact discovery |
| August 31, 2026 | Expert report(s) for issues on which a Party has the burden of proof or persuasion |
| September 30, 2026 | Rebuttal expert report(s) |
| December 11, 2026 | Expert Discovery Cutoff |

The Court **ORDERS** that discovery shall proceed in accordance with the schedule set forth above. The Court may modify the dates or deadlines above depending on circumstances in the case and in the exercise of its discretion to manage discovery, and counsel are advised to monitor the docket for any Text Orders or other notices of changes to discovery scheduling.

As discussed at the DMC and in the Parties' Status Report, the Court defers setting a schedule for (or numerical limits on) Phase Two discovery at this time. The Court will address such issues with the Parties after the close of Phase One Discovery.

The Parties **SHALL** cooperate on scheduling and reaching agreement on individual needs

14

to take certain discovery out of time or after a deadline without the need to reset the entire schedule.

With regard to the next and succeeding DMC's, the Court reminds the Parties of Section I of the Court's Standing Discovery Order ("Practice Development for Members of the Bar").

**IT IS SO ORDERED.**

Dated: May 27, 2026

_____
PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California

15